UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-62042-CIV-ZLOCH/ROSENBAUM

HYLTON NESBETH, WAYNE GALLIMORE,
and CHRISTOPHER WALKER,

        Plaintiffs,

v.

WACHOVIA BANK, a North Carolina
corporation, *et al.*,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

    This matter comes before the Court on Defendant Wachovia Bank's Motion to Dismiss the Complaint with Prejudice [D.E. 9], upon referral by the Honorable William J. Zloch. [D.E. 22]. I have carefully reviewed Defendant's Motion, all filings in support thereof and in opposition thereto, and the case file, and am otherwise duly advised in the premises. Upon consideration of these materials, I respectfully recommend that the Court grant Defendant Wachovia Bank's Motion to Dismiss [D.E. 9] in its entirety.[1]

*Background*

    This matter arises out of an alleged foreign currency exchange ("FOREX") Ponzi scheme mainly operated out of the Turks and Caicos Islands. *See* D.E. 1-1 at 13, ¶ 33.[2] According to the

---

    [1]Wachovia Bank is one of eighteen defendants named in the Complaint. *See* D.E. 1-1.

    [2]Some docket entries, including this one, have two page-numbering systems resulting in different page numbers on the same page: the page number of the original document and the page number imprinted across the top of the page by the Court's CM/ECF system. This Order refers

Complaint, Defendants David Smith, Joseph Issa, and their co-conspirators promoted the scheme to the Jamaican-American community living in the United States and in the Eastern Caribbean. *Id*. at 12, ¶ 30. The Complaint further asserts that Plaintiffs Hylton Nesbeth, Wayne Gallimore, and Christopher Walker ("Plaintiffs") fell victim to the scheme, *id.* at 27, ¶ 65, and sets forth a variety of counts against the several Defendants in this case, including claims against Defendant Wachovia Bank ("Wachovia") for its alleged role in facilitating the scheme. More specifically, the Complaint alleges that Wachovia violated the Securities Act of 1933, the Securities Exchange Act of 1934, and the Bank Secrecy Act as amended by the USA PATRIOT Act, and the Complaint further seeks recovery for unjust enrichment and fraudulent misrepresentation. *See id.* at 16, ¶ 40.[3]

With respect to the workings of the alleged scheme, the Complaint avers that Defendant Smith and his co-conspirators convinced more than 6,000 investors that through a company known as the Overseas Locket International Corporation ("OLINT"), they could enjoy a return of 10% per month by participating in FOREX trading. *Id.* at ¶ 31. Moreover, Plaintiffs assert, Defendants Smith and Jared Martinez assured prospective investors of the safety of their investments, claiming that only 20% of the principal was at risk and guaranteeing that the remaining 80% would be held in escrow. *Id.* As a result, according to the Complaint, OLINT raised at least $220 million. *Id.* at 15, ¶ 38.

Contrary to the representations of Defendant Smith and his alleged co-conspirators, however, the Complaint continues, Defendants used less than ten percent of the funds raised for trading. *See*

---

to the page numbers left by the Court's CM/ECF system.

[3] Plaintiffs assert causes of action against Wachovia in Counts I, II, III, IV, VII, and VIII of the Complaint. Counts V, VI, and IX are not applicable to Wachovia.

*id.* at 16, ¶ 39. And, Defendant Smith and the co-conspirators suffered significant trading losses on the funds that they did invest. *Id.*

As for the remaining funds, the Complaint alleges that OLINT used much of the monies to pay off earlier investors and for their own personal benefit. *Id.* at ¶¶ 39, 34. Indeed, based on the Complaint, during the course of the alleged conspiracy, in 2006, OLINT announced that it would transfer part of its FOREX trading business to Orlando, Florida. *Id*. at 14, ¶ 34. Defendant Smith and his co-conspirators then allegedly transferred all of OLINT's assets to JIJ Investments, a phony corporation owned by OLINT and controlled by Defendant Isaac Martinez. *Id*. The Complaint asserts that Defendants engaged in this transfer without the consent of OLINT investors, even though OLINT was contractually obligated to notify investors of company transfers. *Id.* at 20, ¶ 51; 83, ¶ 3. Defendant Smith and his co-conspirators also allegedly used Defendants MZ Holdings Limited and USIMO, foreign corporations owned by Defendant Issa, to collect deposits from OLINT depositors and launder the proceeds on their way into Defendant Issa's personal accounts and into Defendant Cool Corporation. *Id.* at 17, ¶ 42. By the end of 2008, the Complaint continues, OLINT stopped making payments to investors. *Id.* at 16, ¶ 39.

Plaintiffs further aver that as a result of the conduct described above, the Royal TCI Police Financial Crimes Unit arrested Defendant Smith and charged him with twenty-six counts of money laundering, fraud, and theft. *Id.* at 16, ¶ 41. As of July 31, 2009, the Turks and Caicos Supreme Court had located only $13 million in United States dollars. *Id.* at 16, ¶ 39.

According to the Complaint, Wachovia facilitated the Ponzi scheme by receiving and forwarding wire transfers from Defendants Smith and OLINT to Defendants Isaac Martinez and JIJ Investments. *Id.* at 19, ¶ 50. In conducting these transfers, Wachovia allegedly failed to apply its

internal "know your client" principal and did not obtain the necessary information about OLINT and its client to ensure that the funds were not being used for illicit purposes. *Id*. at 24, ¶ 60. Wachovia assessed and received wire transfer fees for the services it provided to Defendants Smith, OLINT, and the Martinezes. *Id.* at 25, ¶ 60.

Consequently, on December 16, 2009, Plaintiffs filed their Complaint against Defendants, including Wachovia, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County. *See* D.E. 1-1 at 2. Wachovia then timely removed the action to this Court, invoking federal question jurisdiction. D.E. 1 at 3. Thereafter, Wachovia filed the pending Motion to Dismiss, and the Honorable William J. Zloch referred the matter to me for a report and recommendation. *See* D.E. 9; D.E. 22.

*Analysis*

**Standard Governing A Motion to Dismiss**

Wachovia Bank seeks dismissal under Rule 12(b)(6), Fed. R. Civ. P. That rule provides, in relevant part,

> (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> (6) failure to state a claim upon which relief can be granted; . . . .

*Id.* The Court, therefore, considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme

Court has recently clarified that while a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Wilcombie v. Teevee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Corbitt v. Home Depot U.S.A., Inc.*, 573 F.3d 1223, 1256 (11th Cir. July 10, 2009); *Cobb v. State of Florida*, 293 F. App'x 708, 709 (11th Cir. 2008); *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Similarly, "naked assertion[s]" bereft of "further factual enhancement" do not suffice, either. *Twombly*, 550 U.S. at 555, 557. Rather, as the Supreme Court has explained, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1929 (2009) (quoting *Twombly*, 550 U.S. at 570). When reviewing a motion to dismiss, the Court should accept the non-conclusory allegations in the complaint as true, and evaluate all inferences derived from those facts in favor of the plaintiff. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003) (internal citation omitted); *see also Cobb*, 293 F. App'x at 709; *Brown v. Budget Rent-A-Car Systems, Inc.*, 119 F.3d 922, 923 (11th Cir. 1997). With these standards in mind the Court turns to the substantive merits of Wachovia's Motion to Dismiss.

**Count I**

Count I alleges that Wachovia Bank violated Sections 5(a) and 5(c), 15 U.S.C.A. §§ 77(e)(a) and 77(e)(c), of the Securities Act of 1933 ("Securities Act") by providing wire transfer services for Defendants OLINT and Smith without filing a registration statement with the Securities and Exchange Commission ("SEC"). Thus, the Court begins by reviewing Sections 5(a) and (c) of the Securities Act. Section 5(c) mandates the filing of a registration statement:

> (c) **Necessity of filing registration statement**
> It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails *to offer to sell* or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

15 U.S.C.A. § 77(e)(c) (emphasis added). Section 5(a) makes it unlawful to use interstate facilities to sell or deliver unregistered securities:

> (a) **Sale or delivery after sale of unregistered securities**
> Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly –
>
> (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mail *to sell* such security through the use or medium of any prospectus or otherwise; or
>
> (2) to carry or cause to be carried through mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery.

15 U.S.C.A § 77(e)(a) (emphasis).

Based on the statutory language and on case law, Wachovia asserts that Section 5 pertains only to those who "sell" or "offer to sell." *See* D.E. 9 at 5. Because the Complaint does not allege that Wachovia acted as a "seller," and further, because Wachovia did not act as a "seller," Wachovia contends, the Complaint fails to state a cause of action under Section 5. *See id*. at 6.

This Court agrees with Wachovia that Count I of the Complaint must be dismissed because it does not allege as currently drafted – nor could it successfully assert if amended – that Wachovia

acted as a "seller" or "offeror" under Section 5 of the Securities Act. First, the allegation that a defendant served as a "seller" or "offeror" of securities constitutes a vital element of the cause of action that Plaintiffs assert in Count I of the Complaint. *See Raiford v. Buslease, Inc.*, 825 F.2d 351, 354 (11th Cir. 1987) (in order to establish a *prima facie* case of a violation of Section 5, a plaintiff must allege (1) the sale or offer to sell securities, (2) the absence of a registration statement covering the securities, and (3) the use of the mails and facilities of interstate commerce in connection with the sale or offer). Yet conspicuously absent from the Complaint is any allegation that Wachovia engaged in the sale or offer to sell securities. For this reason alone, Count I of the Complaint must fail.

Nor does it seem that amendment can correct this deficiency because the facts that the Complaint does aver appear to demonstrate that, as a matter of law, Wachovia did not act as a "seller" or "offeror" for purposes of Section 5. In *Pinter v. Dahl*, 486 U.S. 622, 642-47 (1988), the United States Supreme Court considered the meaning of the phrase "person who offers or sells a security" contained in Section 12(1) of the Securities Act, 15 U.S.C.A. § 77*l*(1). Section 12(1) outlines the civil liabilities that arise in connection with prospectuses and communications for any person who offers or sells a security in violation of Section 5 of the Securities Act. *See* 15 U.S.C.A. § 77*l*(1). The Supreme Court concluded that the term requires the person to have either (1) passed title of the security to the plaintiff, or (2) successfully solicited the purchase motivated at least in part by his own financial interest. *Id.*

In *Pinter*, Pinter sold unregistered securities to Dahl, one of the plaintiffs, who later successfully solicited the venture opportunity to his friends. 486 U.S. at 625-26. Dahl did not receive a commission for his solicitation. *Id*. at 626. When the venture failed, the plaintiffs,

including Dahl, sued Pinter under § 12(1) of the Securities Act for the unlawful sale of unregistered securities. *Id*. at 627. Dahl counterclaimed against Pinter. The Supreme Court concluded that the record did not permit it to determine whether Dahl was also liable under § 12(1) of the Securities Act as a "seller" for the solicitation to his friends and family because the record did not provide information regarding whether Dahl had the kind of financial interest in the sales that made him liable as a "seller." *Id.* at 654. Nevertheless, the Court held that a collateral participant in unlawful securities sales transactions such as Dahl appeared to be, who did not actually solicit sale for his own financial interest, cannot be held liable as a "seller" under § 12(1) of the Securities Act, 15 U.S.C.A. §77*l* (1), even when that person's involvement in the transaction constitutes a substantial factor in causing the transaction to take place. *Id*. at 653.

The Eleventh Circuit has had occasion to apply the teachings of *Pinter* regarding Section 12(1) to Section 12(2) of the Securities Act. In *Ryder Int'l Corp. v. First American National Bank*, 943 F.2d 1521 (11th Cir. 1991), a customer purchased corporate commercial paper through First American National Bank ("First American"). *Ryder*, 943 F.2d at 1522. The commercial paper company defaulted on its obligations, and the plaintiffs sued First American for violations of Section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2), which makes a person who "offers or sells a security" liable to the buyer under certain circumstances. *Id*. Applying the *Pinter* test, the Eleventh Circuit determined that providing financial information concerning the availability of commercial paper for sale and the execution of the customer's orders did not render First American an "offeror" or a "seller" under Section 12(2) of the Securities Act. *Ryder*, 943 F.2d at 1521.

While the instant case involves a challenge under Section 5, which, in turn, relies on Section 12(1) to create civil liability, the Eleventh Circuit's construction of the term "seller" from Section

12(2) is, nonetheless, binding here because the Eleventh Circuit has recognized that the term as used in Sections 12(1) and 12(2) should have the same meaning. *See Ryder*, 943 F.2d at 1529-30. The Complaint in this case does not establish the type of financial interest on the part of Wachovia that *Pinter* and its progeny contemplate. Plaintiffs allege only that Wachovia Bank financially benefitted from sending multiple wire transfers from Defendants OLINT and Smith to Defendants Isaac Martinez and JIJ Investments in the United States, by assessing wire transfer fees. D.E. 1-1 at 50. They do not claim, however, that Wachovia either passed title of the alleged securities or that Wachovia, motivated at least in part by its own financial interest in the sale, successfully solicited the purchase of the securities involved. Thus, Wachovia's role does not appear to rise even to the level of that of First American, whose part the Eleventh Circuit found to be insufficient to deem First American a "seller."

While Wachovia's wire transfers might have facilitated Defendant Smith and his alleged co-conspirators' ability to commit the alleged securities fraud, such activities do not show that Wachovia participated, for its own financial interest, in soliciting Plaintiffs' investment in this case. In the absence of allegations establishing that circumstance or that Wachovia actually passed title in the securities at issue, the Complaint fails to state a cause of action against Wachovia under Section 5 of the Securities Act. Accordingly, I respectfully recommend that the Court grant Wachovia's Motion to Dismiss as it applies to Count I.

**Counts II and III**

Counts II and III assert that Wachovia violated Sections 17(a)(1) through (3) of the Securities

Act,[4] 15 U.S.C.A. §§ 77q(a)(1) through (3).[5]  Wachovia moves to dismiss these counts on the grounds that Section 17(a) of the Securities Act, 15 U.S.C.A. § 77q(a), does not provide for a private right of action.  D.E. 9 at 5.

In support of this contention, Wachovia relies significantly on *Currie v. Cayman Resources Corp.*, 835 F.2d 780 (11th Cir. 1988), where the Eleventh Circuit held that Section 17(a) does not imply a private cause of action and that the district court correctly dismissed the plaintiff's theory of relief.  This Court agrees with Wachovia's assessment of the governing standard.  While the Supreme Court has not yet decided whether Section 17(a) implies a private right of action, the circuit courts to have considered the matter in more recent years,[6] including the Eleventh Circuit in *Currie*, have held that it does not.  *See, e.g. Schliefke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir. 1989);

---

[4]Plaintiffs allege that Wachovia violated § 17(a)(1) of the Securities Act when it "obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  D.E. 1-1 at 30, ¶ 2.  This language, however, derives from a violation of § 17(a)(2) of the Securities Act, not § 17(a)(1).

[5]Count II in the Complaint ends with the word "and."  D.E. 1-1 at 30.  The Court can consider only what is before it.  Consequently, in the absence of further pleading, the Court must assess the viability of Count II against Wachovia under Section 17(a) of the Securities Act from the allegations contained in paragraphs 1 through 67 and in the incomplete paragraph 69 appearing under "SECOND CLAIM."  The Court further notes that the Complaint contains a second, different paragraph designated as paragraph 69 under "FOURTH CLAIM" at p. 33 of the Complaint.  The Court has not considered the second paragraph 69 in evaluating the viability of Count II.

[6]Prior to the Supreme Court's decision in *Aaron v. SEC*, 446 U.S. 680 (1980), some courts had concluded that Section 17(a) implied a private right of action by comparing Section 17(a) to Rule 10b-5, where a private right of action does exist.  *See, e.g., Finkel v. Stratton Corp.*, 962 F.2d 169, 175 (2d Cir. 1992).  *Aaron*, however, "broke the link between rule 10b-5 and section 17(a) on which [the courts] premised [their] decision . . . ."  *Finkel*, 962 F.2d at 175.  As a result, courts that had previously found an implied private cause of action under Section 17(a) reached the contrary conclusion following the Supreme Court's issuance of *Aaron*.

-10-

*Newcome v. Esrey*, 862 F.2d 1099, 1101-07 (4th Cir. 1988) (*en banc*); *In re Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349, 1358 (9th Cir. 1987) (*en banc*); *Deviries v. Prudential-Bache Securities, Inc.*, 805 F.2d 326, 328 (8th Cir. 1986); *Zinc v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 334 (10th Cir. 1993); *Finkel v. Stratton Corp.*, 962 F.2d 169 (2d Cir. 1992).

In *Currie*, the Eleventh Circuit adopted the Fifth Circuit's modified *Cort v. Ash*, 422 U.S. 66 (1975), analysis set forth in *Landry v. All American Assurance Company*, 688 F.2d 381 (5th Cir. 1982), concluding that Section 17(a) does not imply a private cause of action. 835 F.2d at 784-85. In its analysis, the Fifth Circuit noted that under *Cort v. Ash*, courts considered four factors in determining whether a statute implied a private cause of action:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"– that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally related to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Currie*, 835 F.2d at 784 n.9 (quoting *Cort*, 422 U.S. at 78) (emphasis in *Cort*) (citations omitted).

These four elements, however, are not weighed equally in the balance. *Landry*, 688 F.2d at 388. Rather, "the ultimate issue is whether Congress intended to create a private cause of action." *Id.* (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-77 (1979) and *California v. Sierra Club*, 451 U.S. 287, 293 (1981)). Indeed, the Supreme Court has held that if neither the statutory language nor the legislative history shows a legislative intention to provide for a private cause of action, the inquiry ends by denying such a private cause of action. *Id.* (citing *Transamerica*

*Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979).

Taking this guidance into account, the Fifth Circuit concluded that the legislative history behind Section 17(a) of the Securities Act points away from the implication of a private cause of action. *Landry,* 688 F.2d at 389. As the Eleventh Circuit has adopted this analysis, Plaintiffs' actions against Wachovia under Section 17(a) of the Securities Act must fail as a matter of law for lack of a private cause of action. *See also Smith v. Smith*, 184 F.R.D. 420, 422 (S.D. Fla. 1998) ("The law in the Eleventh Circuit clearly states there is no private right of action under section 17."); *Fox v. Acadia State Bank*, 937 F.2d 1566 (11th Cir. 1991) (Eleventh Circuit affirmed district court's imposition of sanctions due to failure of plaintiff to bring the *Currie* decision to the court's attention). Accordingly, I respectfully recommend that the Court grant Wachovia Bank's Motion to Dismiss as it applies to Counts II and III.

**Count IV**

Count IV, entitled "Misrepresentation," on its face, alleges that all Defendants, including Wachovia, "directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77g(a)]." D.E. 1-1 at 32, ¶ 72. Section 17(a)(1) of the Securities Act, however, is not codified at 15 U.S.C. § 77g(a). Rather, it is codified at 15 U.S.C. § 77q. Moreover, Section 77g(a) pertains to information required in a registration statement, not to misrepresentation.

Adding to the mystery regarding precisely what it is that Count IV charges is language appearing at the top of page 33 of the Complaint.[7] This language appears to be a quotation of Rule

---

[7]This language appears in a paragraph numbered 72. Because Count V contains a second paragraph numbered paragraph 72, the Court identifies the paragraph 72 in Count IV by its location in the Complaint. The Court further notes that the sequential numbering of the

10b-5, promulgated by the SEC pursuant to its authority under the Securities Exchange Act of 1934, 15 U.S.C. § 77, *et seq.* While Plaintiffs' Response to Defendant Mastercard Worldwide's Motion to Dismiss appears to suggest that Plaintiffs mistakenly referred to "Section 17(a)(1) of the Securities Act [15 U.S.C. § 77g(a)]" and really intended to pursue the misrepresentation claim in the Complaint, *i.e.*, Count IV, under Rule 10b-5,[8] *see* D.E. 24 at 3, the Complaint itself does not refer in Count IV to Rule 10b-5. Instead, it invokes only "Section 17(a)(1) of the Securities Act [15 U.S.C. § 77g(a)]." D.E. 1-1 at 32, ¶72.

Apparently as a result of this confusion, Wachovia construes Count IV as pursuing another claim under Section 17(a) of the Securities Act. Therefore, Wachovia argues that Count IV must be dismissed because no private cause of action exists under Section 17(a) of the Securities Act. For the reasons already discussed, this Court agrees with Wachovia and recommends dismissal of Count IV.

Furthermore, even if Count IV had referred in its charging language to Rule 10b-5 by name, the outcome would not change. In *Tellabs, Inc. v. Makor Issues & Right, Ltd.,* 551 U.S. 308, 328 (2007), the Supreme Court held that "[a] plaintiff alleging fraud in a § 10(b) action . . . must plead

---

paragraphs appearing in Count IV is as follows: 68, 70, 71, 72, 69, 70, 71. Thus, the Count contains paragraphs that are numbered out of order, and it includes two paragraphs each numbered 70 and 71. In addition, the paragraph numbers that appear only once in Count IV are used elsewhere in the Complaint to identify different paragraphs under other counts. *See, e.g.*, D.E. 1-1 at 31 and 29 (both reflecting paragraphs numbered "68"). The contents of the paragraphs bearing the same number do not duplicate one another.

[8]The Response actually refers to "Section 10(b)5 o[f] the Exchange Act." *See* D.E. 24 at 3. While the Exchange Act contains a section designated "Section 10(b)," 15 U.S.C. § 78j(b), it includes no section numbered "10(b)5," although the SEC has promulgated ***Rule*** 10b-5 pursuant to its authority under the Exchange Act. The Court therefore construes Plaintiffs' Response to suggest that Plaintiffs intended in Count IV to allege a violation of Section 10(b) of the Exchange Act and of Rule 10b-5.

facts rendering inference of scienter *at least as likely as* any plausible opposing inference." 551 U.S. 308, 328 (2007) (emphasis in original). The Court further clarified that "[t]o establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Id.* at 319 (citation omitted).

With regard to the instant case, Plaintiffs have pleaded no facts in the Complaint that would allow the Court to make an inference of scienter against Wachovia as required under the Exchange Act. Indeed, even Plaintiffs concede in their Response to Defendant Mastercard Worldwide's Motion to Dismiss that, "the peculiar nature of this Ponzi Scheme involved in this case would prevent specific satisfaction of the legal test enunciated in *Tellabs*." D.E. 24 at 3, ¶1. Because the Complaint fails to allege facts satisfying the *Tellabs* pleading standard applying to actions under Section 10(b) of the Exchange Act and Rule 10b-5, even if Count IV had referred to these particular sources of law, it would still lack viability. Accordingly, I respectfully recommend that the Court grant Wachovia Bank's Motion to Dismiss as it applies to Count IV.

**Count VII**

Count VII alleges that all Defendants, including Wachovia, obtained funds and property in furtherance of the securities violations alleged in the Complaint and thus were unjustly enriched. D.E. 1-1 at 36-37, ¶ 77. Wachovia moves to dismiss Plaintiffs' unjust enrichment claim on the grounds that Plaintiffs failed to show that they conferred a direct benefit on Wachovia. D.E. 9 at 7.

In support of this argument, Wachovia directs the Court to *Tooltrend, Inc. v. CMT Utensil, SRL*, 198 F.3d 802, 805 (11th Cir. 1999), where the Eleventh Circuit recognized Florida's three-prong test for unjust enrichment:

> (1) the plaintiff has conferred a benefit on the defendant, who has

> knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Tooltrend, Inc. v. CMT Utensil, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (citing *Greenfield v. Manor Care, Inc.*, 705 So. 2d 926, 930-31 (Fla. 4th DCA 1997), *abrogated on other grounds by Beverly Ent. Fla., Inc. v. Knowles*, 766 So. 2d 335, 336 (Fla. 4th DCA 2000)); *see also Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005) (citing *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1995) (citing *Henry M. Butler, Inc. v. Trizec Props., Inc.*, 524 So. 2d 710 (Fla. 2d DCA 1998))). Florida has construed the first part of the test to require that a plaintiff construe a *direct* benefit on the defendant. *See, e.g., American Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007); *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009); *see also Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998) (identifying the Florida standard as requiring the direct conferral of a benefit on the defendant by the plaintiff).

In *Extraordinary Title Services, LLC*, 1 So. 3d 400, for example, the court considered a case where the plaintiffs, who had accounts with Florida Power & Light ("FPL"), sued FPL and its parent company, FPL Group, Inc. ("Group"). In their complaint, the plaintiffs alleged that FPL collected money from its customers for corporate taxes it expected to have to pay the federal government. FPL, along with Group's other subsidiaries, however, was included in Group's consolidated tax returns. Thus, when FPL's profits were offset by Group's unprofitable subsidiaries' losses, Group enjoyed the benefit of the excess taxes that FPL had collected, that otherwise would have been used to pay federal taxes in the absence of the other subsidiaries' losses. Based on this situation, the

plaintiffs sued Group for unjust enrichment. Finding that the complaint failed to establish a *prima facie* case of unjust enrichment, Florida's Third District Court of Appeal stated,

> [T]he . . . complaint indicates that Plaintiff has absolutely no relationship with Group and has not conferred a direct benefit upon Group. Plaintiff contracted with FPL, not Group, for electricity; Plaintiff paid FPL, not Group; and Group provided no services to Plaintiff. Based on these facts, which are not in dispute, the Plaintiff cannot allege nor establish that it conferred a direct benefit upon Group. Therefore, we conclude that the trial court properly dismissed with prejudice the unjust enrichment claim asserted against Group.

*Id.* at 404.

The instant matter is materially indistinguishable from *Extraordinary Title Services, LLC*. Like the plaintiffs in that case, who failed to aver any relationship between themselves and Group, Plaintiffs here have alleged no relationship between themselves and Wachovia. Just as the *Extraordinary Title Services, LLC*, plaintiffs paid monies to FPL, not Group, whom they sued for unjust enrichment, Plaintiffs in this case paid monies to Defendants Smith, OLINT, and the alleged co-conspirators, not to Wachovia. Nor did Wachovia provide any services to Plaintiffs. Instead, the Complaint alleges only that Wachovia "received funds and property from one or more of the *Defendants*." *See* D.E. 1-1 at 35, ¶ 76 (emphasis added). Under these circumstances, Plaintiffs have failed to allege facts that would allow the Court to infer that they conferred any kind of direct benefit on Wachovia, which would satisfy the *prima facie* requirements for the cause of action of unjust enrichment. Accordingly, I respectfully recommend that the Court grant Wachovia's Motion to Dismiss as it applies to Count VII.

**Count VIII**

Count VIII alleges that Wachovia violated the Bank Secrecy Act as amended by the USA

PATRIOT Act when, in connection with the transactions allegedly conducted by Defendant Smith and his co-conspirators, it failed to (1) report suspicious transactions and suspicious activity, (2) sufficiently verify the identity of customers, and (3) implement and operate appropriate security policies and procedures. D.E. 1-1 at 37, ¶¶ 82-84. Wachovia moves to dismiss Count VIII on the grounds that the Bank Secrecy Act does not provide for a private cause of action. D.E. 9 at 4.

While this issue has not been widely considered within the Eleventh Circuit, a review of other district and circuit decisions, combined with an analysis of congressional intent behind the statute, requires the conclusion that no private cause of action exists under the Bank Secrecy Act ("BSA"). First, numerous courts around the country have apparently uniformly concluded that the BSA provides for no private right of action.[9]

Second, it is not surprising that courts have reached this determination, in view of the BSA's purpose, as stated in the BSA itself: "It is the purpose of this subchapter (except section 5315) to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism." 31 U.S.C.A. § 5311. Moreover, as the Northern District of Ohio has pointed out, *see Wuliger*, 2004 WL 3377416 at *11,

---

[9] *See, e.g., AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004); *James v. Heritage Valley Fed. Cred. Union*, 197 F. App'x 102, 106 (3d Cir. 2006); *El Camino Res., Ltd. v. Huntington Nat'l Bank*, ___ F. Supp. 2d ___, 2010 WL 2651617, *46 (W.D. Mich. July 1, 2010); *Fox v. Cal. Franchise Tax Bd.*, 2010 WL 56094, *6 (D. Colo. Jan. 5, 2010); *Aikens v. Interglobal Mergers and Acquisitions*, 2006 WL 1878323, *2 (S.D.N.Y. July 5, 2006); *In re Agape Litigation*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010); *Wuliger v. Liberty Bank, N.A.*, 2004 WL 3377416, *11 (N.D. Ohio March 4, 2004); *Quinn v. United States of America*, 2003 WL 22133715, *2 (W.D. Okla. July 10, 2003); *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326 (D. Conn. 2008); *Marlin v. Moody Nat'l Bank, N.A.*, 2006 WL 2382325, *7 (S.D. Tex. Aug. 16, 2006); *Armstrong v. Am. Pallet Leasing, Inc.*, 678 F. Supp. 2d 827, 874-75 (N.D. Iowa 2009).

violations of these regulations are subject to injunctions by the Secretary of the Treasury under Section 5320, civil penalties to the United States Government or the Secretary of the Treasury under Section 5321, and criminal penalties under Section 5322.  Thus, the statutory language reveals congressional intent to ensure that certain businesses assist the government in conducting criminal, tax, or regulatory investigations, and it expressly provides for rights of action *by the government*. In contrast to the enforcement provisions authorizing governmental actions, the language of the BSA includes no language expressly authorizing or even suggesting a private right of action.

Similarly, the legislative history focuses on enhancing law enforcement tools through the BSA and its USA PATRIOT Act amendments.  In this regard, even the name that the acronym USA PATRIOT Act abbreviates is "Provide Appropriate Tools Required to Intercept and Obstruct Terrorism," another clear indication of congressional intent to create *law enforcement* tools.  *See also* H.R. Rep. No. 108-724(VI) *222 ("The terrorist attacks on the World Trade Center and the Pentagon . . . led to passage of a historic overhaul of federal law enforcement policies and priorities culminating in the enactment of the USA PATRIOT Act.").  Put simply, nothing in the legislative history supports the conclusion that Congress intended to create a private right of action when it enacted 31 U.S.C. § 5318(g).  Consequently, this Court, like many others, finds no private right of action under the BSA as amended by the USA PATRIOT Act.  Thus, I respectfully recommend that the Court grant Wachovia's Motion to Dismiss as it applies to Count VIII.

## Conclusion

For the foregoing reasons, I respectfully recommend that the Court **GRANT** Defendant Wachovia Bank's Motion to Dismiss [D.E. 9] in its entirety.  The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which

to file written objections, if any, with the Honorable William J. Zloch, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*);[10]  28 U.S.C.A. § 636(b)(1).

**FILED and SUBMITTED** at Fort Lauderdale, Florida, this 19th day of July, 2010.

_____
Robin S. Rosenbaum
United States Magistrate Judge

cc: Honorable William J. Zloch
    Counsel of Record

---

[10] Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).