# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 09-62042-CIV-ZLOCH/ROSENBAUM

HYLTON NESBETH, WAYNE GALLIMORE,
and CHRISTOPHER WALKER,

                Plaintiffs,

v.

MASTERCARD WORLDWIDE, a
New York corporation, *et al.*,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendant MasterCard Worldwide's Motion to Dismiss the Complaint with Prejudice [D.E. 11], upon referral by the Honorable William J. Zloch. [D.E. 22]. I have carefully reviewed Defendant's Motion, all filings in support thereof and in opposition thereto, and the case file. Upon consideration of these materials, I respectfully recommend that the Court grant Defendant MasterCard Worldwide's Motion to Dismiss [D.E. 9] in its entirety.[1]

### *Background*

This matter arises out of an alleged foreign currency exchange ("FOREX") Ponzi scheme mainly operated out of the Turks and Caicos Islands. *See* D.E. 1-1 at 13, ¶ 33.[2] According to the

---

[1]MasterCard Worldwide is one of eighteen defendants named in the Complaint. D.E. 1-1.

[2]Some docket entries, including this one, have two page-numbering systems resulting in different page numbers on the same page: the page number of the original document and the page

Complaint, Defendants David Smith, Joseph Issa, and their co-conspirators promoted the scheme to the Jamaican-American community living in the United States and in the Eastern Caribbean. *Id.* at 12, ¶ 30. The Complaint further asserts that Plaintiffs Hylton Nesbeth, Wayne Gallimore, and Christopher Walker ("Plaintiffs") fell victim to the scheme, *id.* at 27, ¶ 65, and sets forth a variety of counts against the several Defendants in this case, including claims against Defendant MasterCard Worldwide ("MasterCard") for its alleged role in facilitating the scheme. More specifically, the Complaint alleges that MasterCard violated the Securities Act of 1933, the Securities Exchange Act of 1934, and the Bank Secrecy Act as amended by the USA PATRIOT Act, and the Complaint further seeks recover for unjust enrichment and fraudulent misrepresentation. *See id.* at 16, ¶ 40; *see also id.* at Counts I, II, III, IV, VII, and IX.[3]

With respect to the workings of the alleged scheme, the Complaint avers that Defendant Smith and his co-conspirators convinced more than 6,000 investors that through a company known as the Overseas Locket International Corporation ("OLINT"), they could enjoy a return of 10% per month by participating in FOREX trading. *Id.* at ¶ 31. Moreover, Plaintiffs assert, Defendants Smith and Jared Martinez assured prospective investors of the safety of their investments, claiming that only 20% of the principal was at risk and guaranteeing that the remaining 80% would be held in escrow. *Id.* As a result, according to the Complaint, OLINT raised at least $220 million. *Id.* at 15, ¶ 38.

Contrary to the representations of Defendant Smith and his alleged co-conspirators, however,

---

number imprinted across the top of the page by the Court's CM/ECF system. This Order refers to the page numbers left by the Court's CM/ECF system.

[3]Counts V, VI, and VIII are not applicable to MasterCard.

-2-

the Complaint continues, Defendants used less than ten percent of the funds raised for trading.  *See id.* at 16, ¶ 39.  And, Defendant Smith and the co-conspirators suffered significant trading losses on the funds that they did invest.  *Id.*

As for the remaining funds, the Complaint alleges that OLINT used much of the monies to pay off earlier investors and for their own personal benefit.  *Id.* at ¶¶ 39, 34.  Indeed, based on the Complaint, during the course of the alleged conspiracy, in 2006, OLINT announced that it would transfer part of its FOREX trading business to Orlando, Florida.  *Id.* at 14, ¶ 34.  Defendant Smith and his co-conspirators then allegedly transferred all of OLINT's assets to JIJ Investments, a phony corporation owned by OLINT and controlled by Defendant Isaac Martinez.  *Id.*  The Complaint asserts that Defendants engaged in this transfer without the consent of OLINT investors, even though OLINT was contractually obligated to notify investors of company transfers.  *Id.* at 20, ¶ 51; 83, ¶ 3.  Defendant Smith and his co-conspirators also allegedly used Defendants MZ Holdings Limited and USIMO, foreign corporations owned by Defendant Issa, to collect deposits from OLINT depositors and launder the proceeds on their way into Defendant Issa's personal accounts and into Defendant Cool Corporation.  *Id.* at 17, ¶ 42.  By the end of 2008, the Complaint continues, OLINT stopped making payments to investors.  *Id.* at 16, ¶ 39.

Plaintiffs further aver that as a result of the conduct described above, the Royal TCI Police Financial Crimes Unit arrested Defendant Smith and charged him with twenty-six counts of money laundering, fraud, and theft.  *Id.* at 16, ¶ 41.  As of July 31, 2009, the Turks and Caicos Supreme Court had located only $13 million in United States dollars.  *Id.* at 16, ¶ 39.

According to the Complaint, MasterCard facilitated the Ponzi Scheme by entering into a financial relationship with Hallmark Bank and Trust Ltd., an allegedly "rogue financial entity."  *Id.*

at 26, ¶ 62.  The Complaint further claims that Hallmark Bank and Trust Ltd., in turn, issued

"Compass Debit Cards" bearing the MasterCard logo to "OLINT Ponzi scheme stakeholders," and,

by doing that, entered into a relationship that was "mutually beneficial to MasterCard . . . and

Hallmark Bank and Trust Ltd." *Id.*  Based on these allegations, Plaintiffs assert that MasterCard did

not adopt and implement a reasonable anti-money-laundering program designed to prevent its system

from being used to facilitate money laundering.  *Id.*

Consequently, on December 16, 2009, Plaintiffs filed their Complaint against Defendants,

including MasterCard, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward

County.  *See* D.E. 1-1 at 2.  Co-defendant Wachovia Bank then timely removed the action to this

Court, invoking federal question jurisdiction.  D.E. 1 at 3.  Thereafter, MasterCard filed the pending

Motion to Dismiss, and the Honorable William J. Zloch referred the matter to me for a report and

recommendation.  *See* D.E. 11; D.E. 22.

### *Analysis*

**Standard Governing A Motion to Dismiss**

MasterCard seeks dismissal under Rule 12(b)(6), Fed. R. Civ. P.[4]  That rule provides, in

relevant part,

> (b)  How to Present Defenses. Every defense to a claim for relief
> in any pleading must be asserted in the responsive pleading if
> one is required. But a party may assert the following defenses
> by motion:
>
> (6)   failure to state a claim upon which relief can be

---

[4]MasterCard also invokes Rule 9(b), Fed. R. Civ. P., which requires, when alleging fraud or mistake, that a party "state with particularity the circumstances constituting fraud or mistake. . . ."  The Court addresses the heightened pleading standard applicable to fraud later in this Report and Recommendation.  *See infra* at 13-14.

granted; . . . .

*Id.* The Court, therefore, considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified that while a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Wilcombie v. Teevee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Corbitt v. Home Depot U.S.A., Inc.*, 573 F.3d 1223, 1256 (11th Cir. July 10, 2009); *Cobb v. State of Florida*, 293 F. App'x 708, 709 (11th Cir. 2008)*; Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Similarly, "naked assertion[s]" bereft of "further factual enhancement" do not suffice, either. *Twombly*, 550 U.S. at 555, 557. Rather, as the Supreme Court has explained, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1929 (2009) (quoting *Twombly*, 550 U.S. at 570). When reviewing a motion to dismiss, the Court should accept the non-conclusory allegations in the complaint as true, and evaluate all inferences derived from those facts in favor of the plaintiff. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003) (internal citation omitted); *see also Cobb*, 293 F. App'x at 709; *Brown v. Budget Rent-A-Car Systems, Inc.*, 119 F.3d 922, 923 (11th Cir. 1997). With these standards in mind the Court turns to the substantive merits of MasterCard's Motion to Dismiss.

## **Count I**

Count I alleges that MasterCard violated Sections 5(a) and 5(c), 15 U.S.C.A. §§ 77(e)(a) and

77(e)(c), of the Securities Act of 1933 ("Securities Act") by failing to file a registration statement

regarding OLINT with the Securities and Exchange Commission ("SEC").  *See* D.E. 1-1 at 29-30,

Count I.  Thus, the Court begins by reviewing Sections 5(a) and (c) of the Securities Act.  Section 5(c)

mandates the filing of a registration statement:

> (c)   **Necessity of filing registration statement**
> It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails ***to offer to sell*** or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

15 U.S.C.A. § 77(e)(c) (emphasis added).  Section 5(a) makes it unlawful to use interstate facilities

to sell or deliver unregistered securities:

> (a)   **Sale or delivery after sale of unregistered securities**
> Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly –
>
> (1)   to make use of any means or instruments of transportation or communication in interstate commerce or of the mail ***to sell*** such security through the use or medium of any prospectus or otherwise; or
>
> (2)   to carry or cause to be carried through mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery.

15 U.S.C.A § 77(e)(a) (emphasis).

In contrast to the statutory language, MasterCard argues that the Complaint lacks any

allegation that MasterCard "offered for sale" or "sold securities" or "delivered securities after sale"

as required by Section 5 of the Securities Act.  D.E. 11 at 7.  Instead, MasterCard observes, the Complaint alleges only that MasterCard entered into a financial agreement with Hallmark Bank and Trust Ltd., thereby allowing Hallmark Bank to issue "Compass Debit Cards" bearing the MasterCard logo.  *See id*. at 26, ¶ 62.

      This Court agrees with MasterCard that Count I of the Complaint must be dismissed because it does not allege as currently drafted – nor could it successfully assert if amended – that MasterCard acted as a "seller" or "offeror" under Section 5 of the Securities Act, in connection with OLINT. First, the allegation that a defendant served as a "seller" or "offeror" of securities constitutes a vital element of the cause of action that Plaintiffs assert in Count I of the Complaint.  *See Raiford v. Buslease, Inc.*, 825 F.2d 351, 354 (11th Cir. 1987) (in order to establish a *prima facie* case of a violation of Section 5, a plaintiff must allege (1) the sale or offer to sell securities, (2) the absence of a registration statement covering the securities, and (3) the use of the mails and facilities of interstate commerce in connection with the sale or offer).  Yet conspicuously absent from the Complaint is any allegation that MasterCard engaged in the sale or offer to sell securities.  For this reason alone, Count I of the Complaint must fail.

      Nor does it seem that amendment can correct this deficiency because the facts that the Complaint does aver appear to demonstrate that, as a matter of law, MasterCard did not act as a "seller" or "offeror" for purposes of Section 5.  In *Pinter v. Dahl*, 486 U.S. 622, 642-47 (1988), the United States Supreme Court considered the meaning of the phrase "person who offers or sells a security" contained in Section 12(1) of the Securities Act, 15 U.S.C.A. § 77*l*(1).  Section 12(1) outlines the civil liabilities that arise in connection with prospectuses and communications for any person who offers or sells a security in violation of Section 5 of the Securities Act.  *See* 15 U.S.C.A.

§ 77*l*(1). The Supreme Court concluded that the term requires the person to have either (1) passed title of the security to the plaintiff, or (2) successfully solicited the purchase motivated at least in part by his own financial interest. *Id.*

In *Pinter*, Pinter sold unregistered securities to Dahl, one of the plaintiffs, who later successfully solicited the venture opportunity to his friends. 486 U.S. at 625-26. Dahl did not receive a commission for his solicitation. *Id*. at 626. When the venture failed, the plaintiffs, including Dahl, sued Pinter under § 12(1) of the Securities Act for the unlawful sale of unregistered securities. *Id*. at 627. Dahl counterclaimed against Pinter. The Supreme Court concluded that the record did not permit it to determine whether Dahl was also liable under § 12(1) of the Securities Act as a "seller" for the solicitation to his friends and family because the record did not provide information regarding whether Dahl had the kind of financial interest in the sales that made him liable as a "seller." *Id.* at 654. Nevertheless, the Court held that a collateral participant in unlawful securities sales transactions such as Dahl appeared to be, who did not actually solicit sale for his own financial interest, cannot be held liable as a "seller" under § 12(1) of the Securities Act, 15 U.S.C.A. §77*l* (1), even when that person's involvement in the transaction constitutes a substantial factor in causing the transaction to take place. *Id*. at 653.

The Eleventh Circuit has had occasion to apply the teachings of *Pinter* regarding Section 12(1) to Section 12(2) of the Securities Act. In *Ryder Int'l Corp. v. First American National Bank*, 943 F.2d 1521 (11th Cir. 1991), a customer purchased corporate commercial paper through First American National Bank ("First American"). *Ryder*, 943 F.2d at 1522. The commercial paper company defaulted on its obligations, and the plaintiffs sued First American for violations of Section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2), which makes a person who "offers or sells a security" liable

to the buyer under certain circumstances.  *Id*.  Applying the *Pinter* test, the Eleventh Circuit determined that providing financial information concerning the availability of commercial paper for sale and the execution of the customer's orders did not render First American an "offeror" or a "seller" under Section 12(2) of the Securities Act.  *Ryder*, 943 F.2d at 1521.

While the instant case involves a challenge under Section 5, which, in turn, relies on Section 12(1) to create civil liability, the Eleventh Circuit's construction of the term "seller" from Section 12(2) is, nonetheless, binding here because the Eleventh Circuit has recognized that the term as used in Sections 12(1) and 12(2) should have the same meaning.  *See Ryder*, 943 F.2d at 1529-30.  The Complaint in this case does not establish the type of financial interest on the part of MasterCard that *Pinter* and its progeny contemplate.  Plaintiffs allege only that MasterCard entered into a "mutually beneficial" arrangement with Hallmark Bank and Trust Ltd. by which Hallmark Bank and Trust issued MasterCard Compass Debit Cards.  D.E. 1-1 at 26, ¶ 62.  They do not claim, however, that MasterCard either passed title of OLINT (or related) securities or that MasterCard, motivated at least in part by its own financial interest in the sale, successfully solicited the purchase of the securities involved.  Thus, MasterCard's role does not appear to rise even to the level of that of First American, whose part the Eleventh Circuit found to be insufficient to deem First American a "seller."

While MasterCard's agreement with Hallmark Bank and Trust Ltd. to allow Hallmark Bank and Trust Ltd. to issue Compass Debit Cards might have facilitated Defendant Smith and his alleged co-conspirators' ability to commit the alleged securities fraud, such an agreement alone cannot show that MasterCard participated, for its own financial interest, in soliciting Plaintiffs' investment in OLINT (or related securities).  In the absence of allegations establishing that circumstance or that MasterCard actually passed title in the securities at issue, the Complaint fails to state a cause of action

against MasterCard under Section 5 of the Securities Act. Accordingly, I respectfully recommend that the Court grant MasterCard's Motion to Dismiss as it applies to Count I.

**Count II & III**

Counts II and III assert that MasterCard violated Sections 17(a)(1) through (3) of the Securities Act,[5] 15 U.S.C.A. §§ 77q(a)(1) through (3).[6] MasterCard moves to dismiss these counts on the grounds that Section 17(a) of the Securities Act, 15 U.S.C.A. § 77q(a), does not provide for a private right of action. D.E. 11 at 9.

In support of this contention, MasterCard relies significantly on *Currie v. Cayman Resources Corp.*, 835 F.2d 780 (11th Cir. 1988), where the Eleventh Circuit held that Section 17(a) does not imply a private cause of action and that the district court correctly dismissed the plaintiff's theory of relief. This Court agrees with MasterCard's assessment of the governing standard. While the Supreme Court has not yet decided whether Section 17(a) implies a private right of action, the circuit courts to have considered the matter in more recent years,[7] including the Eleventh Circuit in *Currie*,

---

[5]Plaintiffs allege that MasterCard violated § 17(a)(1) of the Securities Act when it "obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." D.E. 1-1 at 30, ¶ 2. This language, however, derives from a violation of § 17(a)(2) of the Securities Act, not § 17(a)(1).

[6]Count II in the Complaint ends with the word "and." D.E. 1-1 at 30. The Court can consider only what is before it. Consequently, in the absence of further pleading, the Court must assess the viability of Count II against MasterCard under Section 17(a) of the Securities Act from the allegations contained in paragraphs 1 through 67 and in the incomplete paragraph 69 appearing under "SECOND CLAIM." The Court further notes that the Complaint contains a second, different paragraph designated as paragraph 69 under "FOURTH CLAIM" at p. 33 of the Complaint. The Court has not considered the second paragraph 69 in evaluating the viability of Count II.

[7]Prior to the Supreme Court's decision in *Aaron v. SEC*, 446 U.S. 680 (1980), some courts had concluded that Section 17(a) implied a private right of action by comparing Section

have held that it does not.  *See, e.g. Schliefke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir. 1989);

*Newcome v. Esrey*, 862 F.2d 1099, 1101-07 (4th Cir. 1988) (*en banc*); *In re Washington Public Power*

*Supply System Securities Litigation*, 823 F.2d 1349, 1358 (9th Cir. 1987) (*en banc*); *Deviries v.*

*Prudential-Bache Securities, Inc.*, 805 F.2d 326, 328 (8th Cir. 1986); *Zinc v. Merrill Lynch Pierce*

*Fenner & Smith, Inc.*, 13 F.3d 330, 334 (10th Cir. 1993); *Finkel v. Stratton Corp.*, 962 F.2d 169 (2d

Cir. 1992).

  In *Currie*, the Eleventh Circuit adopted the Fifth Circuit's modified *Cort v. Ash*, 422 U.S. 66

(1975), analysis set forth in *Landry v. All American Assurance Company*, 688 F.2d 381 (5th Cir.

1982), concluding that Section 17(a) does not imply a private cause of action.  835 F.2d at 784-85.

In its analysis, the Fifth Circuit noted that under *Cort v. Ash*, courts considered four factors in

determining whether a statute implied a private cause of action:

> First, is the plaintiff "one of the class for whose *especial* benefit the
> statute was enacted,"– that is, does the statute create a federal right in
> favor of the plaintiff? Second, is there any indication of legislative
> intent, explicit or implicit, either to create such a remedy or to deny
> one? Third, is it consistent with the underlying purposes of the
> legislative scheme to imply such a remedy for the plaintiff? And
> finally, is the cause of action one traditionally related to state law, in
> an area basically the concern of the States, so that it would be
> inappropriate to infer a cause of action based solely on federal law?

*Currie*, 835 F.2d at 784 n.9 (quoting *Cort*, 422 U.S. at 78) (emphasis in *Cort*) (citations omitted).

  These four elements, however, are not weighed equally in the balance.  *Landry*, 688 F.2d at

388.  Rather, "the ultimate issue is whether Congress intended to create a private cause of action."

---

17(a) to Rule 10b-5, where a private right of action does exist.  *See, e.g., Finkel v. Stratton Corp.*,
962 F.2d 169, 175 (2d Cir. 1992).  *Aaron*, however, "broke the link between rule 10b-5 and
section 17(a) on which [the courts] premised [their] decision . . . ."  *Finkel*, 962 F.2d at 175.  As
a result, courts that had previously found an implied private cause of action under Section 17(a)
reached the contrary conclusion following the Supreme Court's issuance of *Aaron*.

*Id.* (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-77 (1979) and *California v. Sierra Club*, 451 U.S. 287, 293 (1981)).  Indeed, the Supreme Court has held that if neither the statutory language nor the legislative history shows a legislative intention to provide for a private cause of action, the inquiry ends by denying such a private cause of action.  *Id.* (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979).

Taking this guidance into account, the Fifth Circuit concluded that the legislative history behind Section 17(a) of the Securities Act points away from the implication of a private cause of action.  *Landry,* 688 F.2d at 389.  As the Eleventh Circuit has adopted this analysis, Plaintiffs' actions against MasterCard under Section 17(a) of the Securities Act must fail as a matter of law for lack of a private cause of action.  *See also Smith v. Smith*, 184 F.R.D. 420, 422 (S.D. Fla. 1998) ("The law in the Eleventh Circuit clearly states there is no private right of action under section 17."); *Fox v. Acadia State Bank*, 937 F.2d 1566 (11th Cir. 1991) (Eleventh Circuit affirmed district court's imposition of sanctions due to failure of plaintiff to bring the *Currie* decision to the court's attention).  Accordingly, I respectfully recommend that the Court grant MasterCard's Motion to Dismiss as it applies to Counts II and III.

## Count IV

_____Count IV, entitled "Misrepresentation," on its face, alleges that all Defendants, including MasterCard, "directly or indirectly violated, and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77g(a)]." D.E. 1-1 at 32, ¶ 72.  Section 17(a)(1) of the Securities Act, however, is not codified at 15 U.S.C. § 77g(a).  Rather, it is codified at 15 U.S.C. § 77q.  Moreover, Section 77g(a) pertains to information required in a registration statement, not to misrepresentation.

-12-

Adding to the mystery regarding precisely what it is that Count IV charges is language appearing at the top of page 33 of the Complaint.[8]  This language appears to be a quotation of Rule 10b-5, promulgated by the SEC pursuant to its authority under the Securities Exchange Act of 1934, 15 U.S.C. § 77, *et seq.*  While Plaintiffs' Response to Mastercard Worldwide's Motion to Dismiss appears to suggest that Plaintiffs mistakenly referred to "Section 17(a)(1) of the Securities Act [15 U.S.C. § 77g(a)]" and really intended to pursue the misrepresentation claim in the Complaint, *i.e.*, Count IV, under Rule 10b-5,[9] *see* D.E. 24 at 3, the Complaint itself does not refer in Count IV to Rule 10b-5.  Instead, it invokes only "Section 17(a)(1) of the Securities Act [15 U.S.C. § 77g(a)]."  D.E. 1-1 at 32, ¶72.

Nevertheless, MasterCard construes Count IV as charging a violation of Section 10(b)(5) of the Exchange Act.  *See* D.E. 11 at 9.  MasterCard seeks dismissal of the count for failure to allege facts satisfying the requisite elements of a claim under Section 10(b) of the Exchange Act.  This Court agrees that Count IV does not set forth sufficient allegations to establish each element of the cause

---

[8]This language appears in a paragraph numbered 72.  Because Count V contains a second paragraph numbered paragraph 72, the Court identifies the paragraph 72 in Count IV by its location in the Complaint.  The Court further notes that the sequential numbering of the paragraphs appearing in Count IV is as follows: 68, 70, 71, 72, 69, 70, 71.  Thus, the Count contains paragraphs that are numbered out of order, and it includes two paragraphs each numbered 70 and 71.  In addition, the paragraph numbers that appear only once in Count IV are used elsewhere in the Complaint to identify different paragraphs under other counts.  *See, e.g.*, D.E. 1-1 at 31 and 29 (both reflecting paragraphs numbered "68").  The contents of the paragraphs bearing the same number do not duplicate one another.

[9]The Response actually refers to "Section 10(b)5 o[f] the Exchange Act."  *See* D.E. 24 at 3.  While the Exchange Act contains a section designated "Section 10(b)," 15 U.S.C. § 78j(b), it includes no section numbered "10(b)5," although the SEC has promulgated ***Rule*** 10b-5 pursuant to its authority under the Exchange Act.  The Court therefore construes Plaintiffs' Response to suggest that Plaintiffs intended in Count IV to allege a violation of Section 10(b) of the Exchange Act and of Rule 10b-5.

of action it purports to plead.

To state a claim under Section 10(b) of the Exchange Act, a plaintiff "must show the following: '(1) a misstatement or omission, (2) of a material fact, (3) made with scienter, (4) on which plaintiff relied, (5) that proximately caused his injury.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir. 1999)).  Moreover, under the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).  Likewise, a complaint must, "with respect to each act or omission alleged to violate [the Exchange Act], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

Rule 9(b), Fed. R. Civ. P., also sets forth enhanced pleading requirements pertaining to allegations of fraud: "In alleging fraud or mistake, a person must state with particularity the circumstances constituting fraud or mistake. . . ."

The Supreme Court has further added its own gloss to these standards.  In *Tellabs, Inc. v. Makor Issues & Right, Ltd.,* 551 U.S. 308, 328 (2007), the Supreme Court held that "[a] plaintiff alleging fraud in a § 10(b) action . . . must plead facts rendering inference of scienter *at least as likely as* any plausible opposing inference."  551 U.S. 308, 328 (2007) (emphasis in original).  The Court further clarified that "[t]o establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'"  *Id.* at 319 (citation omitted).

-14-

In the instant case, the Complaint makes no allegations regarding any misrepresentation or omission by MasterCard. Thus, the Complaint fails to establish the first element of misrepresentation set forth by *Ziemba*. Second, because the Complaint does not identify any misrepresentations or omission by MasterCard, it cannot allege that any misrepresentations or omissions on MasterCard's part were material. Third, the Complaint pleads no facts that would allow the Court to make an inference of scienter against MasterCard as required under the Exchange Act. Indeed, even Plaintiffs concede in their Response to Mastercard Worldwide's Motion to Dismiss that "the peculiar nature of this Ponzi Scheme involved in this case would prevent specific satisfaction of the legal test enunciated in *Tellabs*." D.E. 24 at 3, ¶ 1. Fourth and fifth, as the Complaint fails to allege any material misrepresentations or omissions by MasterCard, it necessarily does not allege that Plaintiffs relied on any such misrepresentations or omissions that proximately caused Plaintiffs' alleged injury.

In short, the Complaint is devoid of any allegations satisfying even a single element of a misrepresentation claim. Because all five elements must be sufficiently alleged to survive a motion to dismiss, even if Count IV had referred expressly to Section 10(b) and Rule 10b-5, it would still lack viability. Accordingly, I respectfully recommend that the Court grant MasterCard's Motion to Dismiss as it applies to Count IV.

**Count VII**

Count VII alleges that all Defendants, including MasterCard, obtained funds and property in furtherance of the securities violations alleged in the Complaint and thus were unjustly enriched. D.E. 1-1 at 36-37, ¶ 77. MasterCard moves to dismiss Plaintiffs' unjust enrichment claim on the grounds that Plaintiffs failed to show that they conferred a direct benefit on MasterCard. D.E. 11at 17-18.

In *Tooltrend, Inc. v. CMT Utensil, SRL*, 198 F.3d 802, 805 (11th Cir. 1999), the Eleventh

Circuit recognized Florida's three-prong test for unjust enrichment:

> (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Tooltrend, Inc. v. CMT Utensil, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (citing *Greenfield v. Manor Care, Inc.*, 705 So. 2d 926, 930-31 (Fla. 4th DCA 1997), *abrogated on other grounds by Beverly Ent. Fla., Inc. v. Knowles*, 766 So. 2d 335, 336 (Fla. 4th DCA 2000)); *see also Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005) (citing *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1995) (citing *Henry M. Butler, Inc. v. Trizec Props., Inc.*, 524 So. 2d 710 (Fla. 2d DCA 1998))).  Florida has construed the first part of the test to require that a plaintiff construe a *direct* benefit on the defendant.  *See, e.g., American Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007); *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009); *see also Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 1998) (identifying the Florida standard as requiring the direct conferral of a benefit on the defendant by the plaintiff).

In *Extraordinary Title Services, LLC*, 1 So. 3d 400, for example, the court considered a case where the plaintiffs, who had accounts with Florida Power & Light ("FPL"), sued FPL and its parent company, FPL Group, Inc. ("Group").  In their complaint, the plaintiffs alleged that FPL collected money from its customers for corporate taxes it expected to have to pay the federal government.  FPL, along with Group's other subsidiaries, however, was included in Group's consolidated tax returns.  Thus, when FPL's profits were offset by Group's unprofitable subsidiaries' losses, Group enjoyed the benefit of the excess taxes that FPL had collected, that otherwise would have been used to pay

federal taxes in the absence of the other subsidiaries' losses.  Based on this situation, the plaintiffs

sued Group for unjust enrichment.  Finding that the complaint failed to establish a *prima facie* case

of unjust enrichment, Florida's Third District Court of Appeal stated,

> [T]he . . . complaint indicates that Plaintiff has absolutely no
> relationship with Group and has not conferred a direct benefit upon
> Group.  Plaintiff contracted with FPL, not Group, for electricity;
> Plaintiff paid FPL, not Group; and Group provided no services to
> Plaintiff.  Based on these facts, which are not in dispute, the Plaintiff
> cannot allege nor establish that it conferred a direct benefit upon
> Group. Therefore, we conclude that the trial court properly dismissed
> with prejudice the unjust enrichment claim asserted against Group.

*Id.* at 404.

The instant matter is materially indistinguishable from *Extraordinary Title Services, LLC*.

Like the plaintiffs in that case, who failed to aver any relationship between themselves and Group,

Plaintiffs here have alleged no relationship between themselves and MasterCard.   Just as the

*Extraordinary Title Services, LLC*, plaintiffs paid monies to FPL, not Group, whom they sued for

unjust enrichment, Plaintiffs in this case paid monies to Defendants Smith, OLINT, and the alleged

co-conspirators, not to MasterCard.  Nor did MasterCard provide any services to Plaintiffs.  Instead,

the Complaint alleges only that MasterCard "entered into a financial relationship with Hallmark Bank

and Trust Ltd.," which, in turn, issued "'Compass Debit Cards' bearing the MasterCard logo to the

OLINT Ponzi scheme stakeholders," *i.e.*, Defendant Smith and his alleged co-conspirators.  D.E. 101

at 26, ¶ 62.  Under these circumstances, Plaintiffs have failed to allege facts that would allow the

Court to infer that they conferred any kind of direct benefit on MasterCard, which would satisfy the

*prima facie* requirements for the cause of action of unjust enrichment.  Accordingly, I respectfully

recommend that the Court grant MasterCard's Motion to Dismiss as it applies to Count VII.

**Count IX**

Count IX is entitled "Violation of Financial Crimes Enforcement Network; Anti-Money Laundering Programs for Operators of a Credit Card System." Although the page numbers purporting to contain Count IX follow in chronological order, the content of Count IX appears to be incomplete. Specifically, IX reads in its entirety, as follows:

- mechanisms for suspicious activity reporting and large currency-transaction reporting;
- BSA/AML training programs for employees; and
- internal audit reviews of the BSA/AML policies and programs.

90.  As a result of MASTERCARD WORLDWIDE's violations, the Plaintiffs have been damaged in an amount in excess of $8 million dollars[.]

D.E. 1-1 at 38. Moreover, the last paragraph immediately preceding Count IX is numbered 85. Nor does Plaintiffs' Response to MasterCard's Motion to Dismiss [D.E. 24] attempt to provide any clarification of this count. Because the Court cannot identify sufficient allegations in Count IX to establish any discernible cause of action, I respectfully recommend that the Court grant MasterCard's Motion to Dismiss as it seeks to dismiss Count IX.

Furthermore, even if this Court agreed with MasterCard's construction of Count IX as purporting to allege a violation of the Bank Secrecy Act and the USA PATRIOT ACT, *see* D.E. 11 at 17-18, neither the USA PATRIOT Act nor the Bank Secrecy Act creates a private cause of action for violations of those statutes and related rules.

While this issue has not been widely considered within the Eleventh Circuit, a review of other district and circuit decisions, combined with an analysis of congressional intent behind the statute, requires the conclusion that no private cause of action exists under the Bank Secrecy Act as amended

by the USA PATRIOT Act ("BSA").  First, numerous courts around the country have apparently uniformly concluded that the BSA provides for no private right of action.[10]

Second, it is not surprising that courts have reached this determination, in view of the BSA's purpose, as stated in the BSA itself:  "It is the purpose of this subchapter (except section 5315) to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism." 31 U.S.C.A. § 5311. Moreover, as the Northern District of Ohio has pointed out, *see Wuliger*, 2004 WL 3377416 at *11, violations of these regulations are subject to injunctions by the Secretary of the Treasury under Section 5320, civil penalties to the United States Government or the Secretary of the Treasury under Section 5321, and criminal penalties under Section 5322.  Thus, the statutory language reveals congressional intent to ensure that certain businesses assist the government in conducting criminal, tax, or regulatory investigations, and it expressly provides for rights of action *by the government*.  In contrast to the enforcement provisions authorizing governmental actions, the language of the BSA includes no language expressly authorizing or even suggesting a private right of action.

Similarly, the legislative history focuses on enhancing law enforcement tools through the BSA

---

[10]*See, e.g., AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004); *James v. Heritage Valley Fed. Cred. Union*, 197 F. App'x 102, 106 (3d Cir. 2006); *El Camino Res., Ltd. v. Huntington Nat'l Bank*, ___ F. Supp. 2d ___, 2010 WL 2651617, *46 (W.D. Mich. July 1, 2010); *Fox v. Cal. Franchise Tax Bd.*, 2010 WL 56094, *6 (D. Colo. Jan. 5, 2010);  *Aikens v. Interglobal Mergers and Acquisitions*, 2006 WL 1878323, *2 (S.D.N.Y. July 5, 2006); *In re Agape Litigation*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010); *Wuliger v. Liberty Bank, N.A.*, 2004 WL 3377416, *11 (N.D. Ohio March 4, 2004); *Quinn v. United States of America*, 2003 WL 22133715, *2 (W.D. Okla. July 10, 2003); *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 326 (D. Conn. 2008); *Marlin v. Moody Nat'l Bank, N.A.*, 2006 WL 2382325, *7 (S.D. Tex. Aug. 16, 2006); *Armstrong v. Am. Pallet Leasing, Inc.*, 678 F. Supp. 2d 827, 874-75 (N.D. Iowa 2009).

and its USA PATRIOT Act amendments.  In this regard, even the name that the acronym USA PATRIOT Act abbreviates is "Provide Appropriate Tools Required to Intercept and Obstruct Terrorism," another clear indication of congressional intent to create *law enforcement* tools.  *See also* H.R. Rep. No. 108-724(VI) *222 ("The terrorist attacks on the World Trade Center and the Pentagon . . . led to passage of a historic overhaul of federal law enforcement policies and priorities culminating in the enactment of the USA PATRIOT Act.").  Put simply, nothing in the legislative history supports the conclusion that Congress intended to create a private right of action when it enacted 31 U.S.C. § 5318(g).  Consequently, this Court, like many others, finds no private right of action under the BSA as amended by the USA PATRIOT Act.  Thus, even assuming, *arguendo*, that Count IX attempts to state a cause of action under the BSA and the USA PATRIOT ACT, such a claim must fail.  I therefore respectfully recommend that the Court grant MasterCard's Motion to Dismiss as it applies to Count IX.

## Conclusion

For the foregoing reasons, I respectfully recommend that the Court **GRANT** Defendant MasterCard's Motion to Dismiss [D.E. 11] in its entirety.  The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en*

*banc*);[11] 28 U.S.C.A. § 636(b)(1).

      **FILED and SUBMITTED** at Fort Lauderdale, Florida, this 19th day of July, 2010.


                                       Robin S. Rosenbaum
                                       United States Magistrate Judge

cc:    Honorable William J. Zloch
        Counsel of Record

---

[11]Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).